480 S.E.2d 85

**The STATE, Respondent,**

v.

**Randy Ray CLUTE, Appellant.**

**No. 2588.**

Court of Appeals of South Carolina.

Heard Oct. 8, 1996.
Decided Nov. 4, 1996.
Rehearing Denied Dec. 31, 1996.

586

588

Stephen P. Groves, Charleston; and Reese I. Joye, Jr. and John L. Drennan, North Charleston, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General G. Robert DeLoach, III, Columbia; and Solicitor Ralph J. Wilson, Conway, for respondent.

CURETON, Judge:

Randy Ray Clute was convicted of driving under the influence, second offense. The circuit court ordered him to pay a $3,000 fine and sentenced him to one year imprisonment, suspended upon payment of the fine plus costs, four years probation, and thirty days public service. Clute appeals. We affirm.

## Facts

On April 23, 1994, Officer Hess of the Georgetown Police Department stopped Clute's vehicle after observing Clute driving erratically. Hess testified that when he approached the vehicle, he noticed a strong odor of alcohol and Clute immediately stated, "I, I know I had too much." Prior to arresting Clute and without reading him his *Miranda* rights, Hess had Clute perform a series of field sobriety tests. According to Hess, Clute failed the sobriety tests, including the horizontal gaze nystagmus test (HGN). Further, Clute's eyes appeared glassy and there was a strong odor of alcohol about his person. Hess arrested Clute for driving under the influence and transported him to the police department. At the station, Hess videotaped Clute performing the field sobriety tests again. Clute refused to take the breathalyzer test.

At a pretrial hearing, Clute moved to suppress any statements he made during the stop and field sobriety tests on the ground he was subjected to custodial interrogation without being read the *Miranda* warnings. The trial court denied the motion. At trial, the State sought to prove Clute had a previous out of state conviction for driving under the influence through a copy of Clute's South Carolina driving record and a notice of suspension from the South Carolina Highway Department. Clute argued this evidence was not sufficient to prove a previous conviction under S.C.Code Ann. § 56–5–2980 (1991). The trial court found the driving records admissible over Clute's objection. Clute moved to preclude Hess from testifying as an expert witness concerning the HGN test. The trial court denied the motion and qualified the officer as an expert witness. Clute also moved to suppress the videotape Hess made of him performing field sobriety tests while at the

police station. The judge admitted the videotape over Clute's objection.

## Discussion

### I.

 On appeal, Clute argues the trial court should have found he was subjected to custodial interrogation during the administration of the field sobriety tests and should therefore have been apprised of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He further argues that because he was not apprised of these rights, the trial court should have found that any statements he made during the administration of the tests were inadmissible. We disagree.

 In *Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988), the United States Supreme Court held that a motorist is not in custody during the performance of field sobriety tests, and is therefore not entitled to a recitation of constitutional rights prior to the tests. Furthermore, the Court found that a motorist's response to questions about his drinking are admissible despite the lack of *Miranda* warnings. *Id.* at 10, 102 S.Ct. at 206–207. Likewise, in *State v. Peele*, 298 S.C. 63, 378 S.E.2d 254 (1989), the South Carolina Supreme Court held that a roadside field sobriety test did not constitute detainment sufficient to rise to the level of custodial interrogation. *Id.*

Because we find nothing extraordinary about the circumstances surrounding the administration of the roadside field sobriety tests in this case, we hold the trial court properly found Clute was not "in custody" for purposes of *Miranda* during the administration of the sobriety tests.

### II.

 Clute also argues the trial court erred in failing to make a specific finding as to whether the statements he made during the traffic stop were voluntary. In support of this contention, Clute cites several cases setting forth the proposition that a defendant need not establish custody in order to be entitled to a hearing on the issue of voluntariness pursuant to

*Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). *See e.g., State v. Silver,* 314 S.C. 483, 431 S.E.2d 250 (1993); *State v. Creech,* 314 S.C. 76, 441 S.E.2d 635 (Ct.App. 1994). Initially, we note Clute makes no argument on appeal that the trial court denied his motion for a *Jackson v. Denno* hearing. Moreover, the argument Clute presents on appeal is not the precise argument he made at trial. Although Clute referred the trial court to, among others, the holdings of *State v. Silver* and *State v. Creech,* he mentioned the cases only in relation to his argument that he was "in custody" at the time of the statements for purposes of *Miranda. Cf. State v. Silver,* 314 S.C. 483, 431 S.E.2d 250 (1993), *aff'g as modified* 307 S.C. 326, 414 S.E.2d 813 (Ct.App.1992) (holding it was error to consider defendant's voluntariness argument on appeal as a *Jackson v. Denno* situation where defendant moved for an *in camera* hearing at trial on the issue of custody and whether he had received *Miranda* warnings rather than on the issue of voluntariness). Moreover, after the trial court ruled that Clute was not in custody for purposes of *Miranda,* Clute failed to request a specific ruling as to the voluntariness issue pursuant to *Jackson v. Denno.* The issue is therefore not preserved for appeal. *See State v. Pierce,* 263 S.C. 23, 207 S.E.2d 414 (1974) (in order to preserve an error for appeal, a defendant must object and ask for a ruling); *State v. Bailey,* 253 S.C. 304, 170 S.E.2d 376 (1969) (objection must be on specific ground); *see also State v. Hudgins,* 319 S.C. 233, 460 S.E.2d 388 (1995) (a party cannot argue one ground below then argue another on appeal); *State v. Silver,* 314 S.C. 483, 431 S.E.2d 250 (ground asserted on appeal must be supported by objection raised at trial).

### III.

Clute further argues the trial court erred in ruling that it was harmless error to introduce the videotaped field sobriety tests taken after he was in police custody because no *Miranda* warnings were given prior to the videotaping. Clute argues the videotaped statements of him reciting the alphabet were highly prejudicial and their impact on the jury was great enough to warrant a mistrial. We disagree.

In determining whether an error is harmless, the test is whether there is a reasonable probability that the

statements contributed to the defendant's conviction of the crime, or if the defendant's statements were merely cumulative. *State v. Bernotas,* 277 S.C. 106, 283 S.E.2d 580 (1981). Where challenged evidence does not prejudice the defendant because it was merely cumulative to independent and overwhelming evidence of guilt, the court will not set aside the conviction. *State v. Newell,* 303 S.C. 471, 401 S.E.2d 420 (Ct.App.1991). Even an error of constitutional magnitude may be harmless if, considering the entire record on appeal, the reviewing court finds beyond a reasonable doubt that the error did not contribute to the verdict. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The State concedes the audio portion of the videotaped field sobriety tests wherein Clute recites the alphabet was improperly admitted over Clute's objection. *See Pennsylvania v. Muniz,* 496 U.S. 582, 604 n. 17, 110 S.Ct. 2638, 2652 n. 17, 110 L.Ed.2d 528 (1990) (holding that drunk driving suspect's counting at officer's request during the field sobriety tests conducted while suspect was in custody qualified as a response to "custodial interrogation" within the meaning of *Miranda.* However, the court did not determine whether the verbal response was "testimonial" in nature). Nevertheless, we agree with the trial court the error was harmless in light of the other evidence of Clute's guilt. The videotaped evidence is cumulative to Officer Hess's properly admitted testimony regarding Clute's inability to recite the alphabet. Officer Hess's testimony as to Clute's performance on the other field sobriety tests was also properly admitted. Furthermore, having viewed the videotape, we agree with the trial court that the physical, nontestimonial evidence on the videotape outweighs any prejudice from the recitation of the alphabet inasmuch as Clute is visibly intoxicated on the videotape. *See Pennsylvania v. Muniz,* 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (Fifth Amendment privilege against self-incrimination protects accused from being compelled to give evidence of testimonial or cumulative nature but not from being compelled to produce real or physical evidence).

## IV.

■ Clute further argues the trial court erred in not granting a mistrial based on the introduction of his South Carolina

driving record for the purpose of proving a prior DUI conviction. Specifically, Clute argues the driving record should have been excluded because it constitutes improper character evidence. This issue is not preserved for appeal.

At trial and out of the presence of the jury, Clute refused to concede he had a prior conviction for driving under the influence. Thus, the State sought to introduce Clute's South Carolina driving record as proof of a prior DUI conviction in another state. Clute objected to the introduction of his South Carolina driving record, arguing that the State had to introduce the actual conviction records rather than the driving record to prove a previous DUI. The trial court ruled the driving record was admissible. Clute did not raise an objection pursuant to *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923), when the State placed his driving record into evidence, but merely renewed the objection he had made out of the presence of the jury. At the close of all evidence, Clute made a motion for a mistrial on the ground the evidence of the previous conviction should not have been admitted, arguing it was unnecessary to prove the prior conviction for the circuit court to gain jurisdiction and the evidence should only have been used during the sentencing phase of the trial. Clute further argued the only reason the State would introduce the evidence would be to prejudice the jury.

An objection to evidence must be contemporaneous and must be upon a specified ground. *State v. Crowley*, 226 S.C. 472, 85 S.E.2d 714 (1955). Here, Clute waited until the close of both the State and defense cases to move for a mistrial on the ground the evidence of the prior conviction was improper character evidence. The failure to make a proper contemporaneous objection to the admission of evidence "cannot be later bootstrapped by a motion for a mistrial." *State v. Lynn*, 277 S.C. 222, 226, 284 S.E.2d 786, 789 (1981). This issue is, therefore, not properly before us for review.

## V.

Clute next contends the State failed to offer sufficient proof of his prior DUI conviction under S.C.Code Ann. §§ 56–5–2970 and 56–5–2980 (1991). We disagree.

■ South Carolina Code Ann. § 56-5-2970 requires public officers to report DUI convictions to the Department of Public Safety on a form provided by the Department. Section 56-5-2980 provides that these reports constitute "prima facie evidence of the information contained on such reports." Given its plain and ordinary construction, the term "prima facie evidence"

> denotes evidence which, if unexplained or uncontradicted, is sufficient in a jury case to carry the case to the jury, and to sustain a verdict in favor of the issue which it supports, but which may be contradicted by other evidence.

*McKenzie v. Standard Accident Ins. Co.,* 198 S.C. 109, 117, 16 S.E.2d 529, 532 (1941).

■ In our view, although §§ 56-5-2970 and 56-5-2980 provide that dispositional records establish a prima facie case, there is nothing in the statutes to prevent the State from introducing other evidence to prove a prior conviction. As such, we find no error in the trial court's submission of the issue to the jury.

## VI.

■ Clute also argues the trial court erred in its reasonable doubt charge to the jury. We disagree.

The trial court instructed the jury on reasonable doubt, stating in pertinent part:

> Now, what is a reasonable doubt? A reasonable doubt is the kind of doubt which would cause a reasonable person to hesitate to act. It is a doubt for which a reason can be given.

■ An instruction on reasonable doubt is defective if a reasonable juror could interpret it to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. *State v. Manning,* 305 S.C. 413, 409 S.E.2d 372 (1991). In *Manning,* the court proposed a model instruction defining reasonable doubt as "the kind of doubt that would cause a reasonable person to hesitate to act." *Id.* at 417, 409 S.E.2d at 375. However, the *Manning* definition is merely a model and trial courts are not required to charge *only* that definition. *State v. Longworth,* 313 S.C. 360, 438

S.E.2d 219 (1993). The charge in this case does not contain the precise language found to be objectionable in *Manning*, (i.e., reference to "moral or grave certainty" or "real reason"), although the trial court did advise the jury that reasonable doubt is a "doubt for which you can give a reason." *See State v. Whipple*, —— S.C. ——, ——, 476 S.E.2d 683, 687 (1996) (upholding a reasonable doubt charge where trial court repeatedly stated that a reasonable doubt was a doubt for which you could give a reason); *State v. Kirkpatrick*, 320 S.C. 38, 462 S.E.2d 884 (1995) (upholding a trial court's charge to the jury that a reasonable doubt is "one for which you could give a reason"); *State v. Hoffman*, 312 S.C. 386, 440 S.E.2d 869 (1994) (upholding a reasonable doubt charge where appellant complained the trial court repeatedly told the jury a reasonable doubt is one for which you can give a reason, finding the charge lacked the offending language in *Manning* ). Viewing the reasonable doubt charge as a whole, we find no reversible error given the court's use of the suggested language in *Manning* that a reasonable doubt is "the kind of doubt that would cause a reasonable person to hesitate to act." *See State v. Rabon*, 275 S.C. 459, 272 S.E.2d 634 (1980) (a jury charge which is substantially correct and covers the law does not require reversal).

## VII.

█ Clute asserts the trial court erred in admitting evidence of the HGN test and in allowing the arresting officer to testify as an expert witness. Specifically, he claims the arresting officer should not have been qualified as an expert because he had not completed twenty hours of training in administering the HGN test and because he administered the HGN test improperly. Clute cites *State v. Sullivan*, 310 S.C. 311, 426 S.E.2d 766 (1993), in support of these arguments. His reliance thereon is misplaced.

█ In *Sullivan*, the Court held that HGN test results were admissible where the arresting officer had approximately twenty hours of training in administering the test. However, the Court did not establish twenty hours as a threshold requirement for an officer to qualify as an expert in administering the test. Generally, the qualification of an expert

witness is within the discretion of the trial court. *State v. McFadden,* 318 S.C. 404, 458 S.E.2d 61 (Ct.App.1995). Defects in the amount and quality of the expert's education or experience go to the weight to be accorded the expert's testimony and not its admissibility. *Id.* The party presenting the expert must show that the witness possesses, either through study or experience, specialized knowledge that makes him better qualified than the jury to form an opinion on a particular subject. *State v. Harris,* 318 S.C. 178, 456 S.E.2d 433 (Ct.App.1995). In this case, the officer who administered the HGN test had completed 16 hours of training to administer the test. In view of the applicable case law, we can discern no abuse of discretion in the trial court's qualification of the administering officer as an expert in this case.

 We also disagree with Clute's argument that the arresting officer in this case should not have been qualified as an expert because he did not administer the HGN test as described in *State v. Sullivan,* 310 S.C. 311, 426 S.E.2d 766. Clute correctly notes that in a footnote, the *Sullivan* Court describes the HGN test as follows:

> Nystagmus is described as an involuntary jerking of the eyeball, a condition that may be aggravated by the effect of chemical depressants on the central nervous system. The HGN test consists of the driver being asked to cover one eye and focus the other on an object held at the driver's eye level by the officer. As the officer moves the object gradually out of the driver's field of vision toward his ear, he watches the driver's eyeball to detect involuntary jerking.

*Sullivan,* 310 S.C. at 311 n. 2, 426 S.E.2d at 766 n. 2 (citations omitted). However, the Court did not establish its description of the test as the sole means of properly administering the test. Indeed, we question the precedential value of the description inasmuch as it appears only in a footnote and the Court made no comment as to its view of the correctness of the procedure. In any event, the arresting officer in this case testified that he was trained to administer the test without covering one of the suspect's eyes. Moreover, it is clear from the record that the officer did not base his decision to arrest Clute solely on the results of the HGN test; rather, the officer found the HGN test results inconclusive and administered two

additional sobriety tests. This procedure is in accordance with the mandates set forth in *Sullivan* regarding the admissibility of HGN test results.[1]

For the foregoing reasons, the conviction is

AFFIRMED.

HEARN and ANDERSON, JJ., concur.

---

1. In *Sullivan*, the Court held that evidence from the HGN test, as from other field sobriety tests, is admissible "when used to elicit objective manifestations of soberness or insobriety." 310 S.C. at 315, 426 S.E.2d at 769. The court stated:

> We hold that evidence arising from HGN tests is not conclusive proof of DUI. A positive HGN test result is to be regarded as merely circumstantial evidence of DUI. Furthermore, HGN tests shall not constitute evidence to establish a specific degree of blood alcohol content. (Citations omitted).
>
> We hold that testimony relating to the HGN test was admissible in the present case because the HGN test was used in conjunction with other field sobriety tests to establish evidence of DUI.

*Id.* at 315–16, 426 S.E.2d at 769.